## PETROFESA et al. v. DENVER & RIO GRANDE WESTERN R. CO. et al.

No. 6900.   Decided June 5, 1946.   (169 P. 2d 808.)

See 67 C. J., Waters, sec. 554; 16 Am. Jur. 604.

*Philo T. Farnsworth Jr., Waldemar Q. Van Cott,* and *Grant H. Bagley,* all of Salt Lake City, for appellants.

*George S. Ballif, Dist. Atty.,* of Provo, for respondents.

McDONOUGH, Justice.

The jury awarded plaintiffs damages for loss of crops during 1943 resulting from alleged blocking of an irrigation ditch on the railroad right-of-way, and defendants appeal.

There was testimony from plaintiff and others that for over 25 years the land purchased by plaintiffs in April 1943 had been irrigated by water from the Boardman Springs, which was conducted to this land through ditches extending from said springs to the railroad right-of-way, and along the easterly side of said right-of-way for some distance, and then going westerly underneath the tracks to the land of plaintiffs. This land is near other land owned by plaintiffs. Plaintiff has been a grower of celery for over 25 years. He and his wife acquired this land in 1943 for the purpose of growing celery and other crops. There was testimony that in order to harvest celery for the early market it must be planted the latter part of April or the early part of May, and there must be sufficient water for planting and also to mature the crop. After preparing several acres for planting in April, and having the plants available for planting, plaintiff in attempting to turn the irrigation water onto his land discovered that the ditch was blocked on the railroad right-of-way. He complained to the section foreman. The ditch was blocked in connection with the construction of an additional track which involved a fill.

By letter to the railroad company dated May 29, 1943, plaintiff stated that he purchased this land because it has an excellent water right through a ditch which runs along the easterly side of the railroad tracks, that the company had obstructed said ditch in connection with some construction work, and he demanded that the company clean it out to enable him to have the free use of the water through said ditch. A few days later the railroad company had a new

ditch constructed, and about June 11th or 12th, the water was turned into the new section of the ditch. Plaintiff subsequently complained that the ditch did not have enough fall and asked that it be dug deeper in places so that the water would not back up. He was told in effect by an agent of the railroad company this would be too difficult, and defendants did nothing further about it.

At the time water was turned into the new section of the ditch, plaintiffs reconditioned the ground for planting, but owing to the lateness of the season, the continued hot weather, and the insufficiency of water, he could only plant late in the evenings and early in the mornings. He planted only 3½ acres. He had to depend upon this ditch system because it is the only way he could get irrigation water. According to plaintiff's testimony, the cost of the plants and planting them was $4.50 per thousand, with 40,000 per acre planted, or $630. He paid $540 for labor in addition to his own services. He harvested only $105 worth of merchantable celery and gave away some which was not marketable. His out-of-pocket loss for the items mentioned was $1,065. The jury awarded only $650 damages.

Appellants contend: (1) The court should have directed a verdict for defendants. (2) If not, then the court should have directed a verdict for nominal damages only. (3) The trial court misdirected the jury on the measure of damages.

The basis of appellants' first contention is that there was no competent evidence of a right in plaintiffs to have water conducted through the ditch on the railroad right-of-way, and that the obstruction of such ditch by defendants violated no right of plaintiffs. We find no merit to such argument. There is competent testimony in the record to establish a ditch right by prescription. Witnesses testified that this land had been watered for over 25 years from water originating at the Boardman Springs, and that the water was conducted through the ditch which went along the railroad right-of-way. There was sufficient competent evidence that plaintiffs and their predecessors had conducted water through this ditch for over 20 years with-

out interruption and ostensibly under claim of right. The fact that a few days after plaintiffs wrote the letter to the railroad company demanding restoration of the ditch, a new section of ditch was constructed because it was impossible to reopen the old ditch after the new tracks were laid, is some evidence that the defendants recognized the right of plaintiffs to have the water conducted through a ditch on the right-of-way. The argument that plaintiffs received no conveyance or grant of any ditch right or easement to conduct water over the right-of-way, disregards the fact that plaintiffs received a warranty deed which is absolute in form. A warranty deed conveys the fee simple title "together with all the appurtenances, right and privileges thereunto belonging," by force of Sec. 78-1-11, U. C. A. 1943, unless some rights are reserved by the terms of the conveyance. This deed conveyed the prescriptive right to conduct water through the ditch along the right-of-way without any mention of such right, because such easement for an appurtenant water right is an appurtenance to the land.

The remaining questions relate to damages. The argument that plaintiffs could recover only nominal damages spends its force when reference is made to the cross-examination of plaintiffs' witnesses which showed that plaintiffs suffered an out-of-pocket loss of at least $1,065. ■
Under such circumstances it would have been error for the court to direct a verdict for only nominal damages. There was testimony to show that this land was adapted to growing celery, and that the yield with sufficient water would result in maturing about 80 per cent of the plants for market. It was competent for the jury to find that the obstruction of the ditch and the later substitution of a new ditch with insufficient carrying capacity, prevented plaintiffs from planting timely and from maturing what they were forced to plant late. The evidence is not such as to compel the jury to find that it was unreasonable to attempt to make a crop by planting in June and July. Hence, the argument that plaintiffs' loss resulted from their own lack of prudence in planting when all hope of maturing a crop

was gone, cannot be sustained. After plaintiffs demanded restoration of the ditch, defendants constructed a new section, and connected the new section with the old sections of the ditch. Plaintiffs were entitled to assume that this new ditch would have the same carrying capacity, and that the lack of sufficient depth in places would be remedied. They were certainly not required to assume that when defendants undertook to remedy the conditions which they had caused, that they would do so only half-heartedly.

As to the contention that the court failed to give proper instructions on the measure of damages, the court followed substantially the rules laid down in *Naylor* v. *Floor*, 51 Utah 382, 170 P. 971, and *Sharp* v. *Cankis Gianulakis*, 63 Utah 249, 225 P. 337. As to the attempted modification of such rules in the instructions, we are of the opinion that defendants were not in any manner prejudiced thereby.

The judgment is affirmed with costs to respondents.

LARSON, C. J., and PRATT, WADE and WOLFE, JJ., concur.